UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X

In Re:

GLOBAL SUPPLIES NY INC.

                                              Chapter 11

                                              Case No. 24-43232-ess

                                        Debtor.
------------------------------------------X

### STIPULATION AND CONSENT INTERIM ORDER AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL, PROVIDING ADEQUATE PROTECTION AND RELATED RELIEF

Global Supplies NY Inc., the debtor and debtor in possession (the "Debtor") and Flushing Bank ("Bank"), Amazon Capital Services ("ACS"), the U.S Small Business Administration ("SBA") and Sellers Funding International Portfolio Ltd. ("SFIP") (collectively the "Secured Lenders") have either consented to the terms of this stipulation and consent order (the "Stipulation") or have not objected thereto: (i) authorizing the Debtor's interim use of the cash collateral of Secured Lenders; (ii) determining adequate protection in connection therewith; and (iii) providing related relief;

AND NOW, upon all the proceedings heretofore had herein, and after due deliberation and good and sufficient cause appearing therefore,

**Recitals:**

A.   On August 1, 2024 (the "Filing Date"), the Debtor filed for protection under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), whereupon the Debtor was authorized to continue in the operation and control of its business and property as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

B.   Prior to the Filing Date, the Debtor executed a Promissory Note (the "Note") on or about

March 26, 2024 in favor of the Bank in the original principal amount of $736,614.13, which Note paid off and replaced a prior loan facility made by Bank to Debtor. In connection with the Note, the Debtor executed a Security Agreement dated March 26, 2024 (the "Security Agreement"), granting the Bank a security interest in all assets of the Debtor, including equipment, machinery, vehicles, inventory, accounts receivable and contract rights and the proceeds thereof (the "Collateral"). Pursuant to the Note, the Security Agreement, and all other documents evidencing or securing the Note (the "Loan Documents"), the Debtor granted the Bank a security interest in the Collateral. The Bank duly perfected its lien on the Collateral by a filing UCC-1 financing statement with the New York State Department of State on April 17, 2018, which was thereafter amended on July 23, 2019 and continued on January 11, 2023. The income generated by the Collateral is cash collateral ("Cash Collateral") within the meaning of the Bankruptcy Code.

C.     As of August 1, 2024, the unpaid principal balance due under the Note was $711,245.11, plus interest in the amount of $4,597.26, plus late fees in the amount of $688.44, for a total unpaid indebtedness of $716,530.81. The Debtor expects to expend cash, including Bank's Cash Collateral, for the payment of current and future operating expenses of the Debtor, including payroll, taxes, utilities, insurance, obligations owed to Bank and other charges.

D.     Prior to the Filing Date, the Debtor executed a Promissory Note and Security Agreement (the "ACS Note") on or about July 3, 2024 in favor of the ACS in the original principal amount of $528,800.00, which ACS Note paid off and replaced a prior loan facility made by ACS to Debtor. The Debtor, under the terms of the ACS Note, granted ACS a lien in

substantially all assets of the Debtor (the "ACS Collateral"). Pursuant to the ACS Note and all other documents evidencing or securing same (the "Loan Documents"), the Debtor granted ACS a lien and security interest in the ACS Collateral. ACS duly perfected its lien on the ACS Collateral by a filing UCC-1 financing statement with the New York State Department of State on March 17, 2021. The income generated by the ACS Collateral is cash collateral ("ACS Cash Collateral") within the meaning of the Bankruptcy Code.

E.      As of August 6, 2024, the unpaid principal balance due under the ACS Note was $528,800.00. As of September 26, 2024, the unpaid principal balance due under the ACS Note was $539,639.53. In addition, as of September 26, 2024, the accrued interest on the ACS Note was $2,941.94, such that the total balance due under the ACS Note was $542,581.47.

F.      The Debtor expects to expend cash, including ACS' Cash Collateral, for the payment of current and future operating expenses of the Debtor, including payroll, taxes, utilities, insurance, obligations owed to Secured Lenders and other charges.

G.      Prior to the Filing Date, the Debtor executed a Revolving Loan Agreement (the "RLA") in favor of SFIP. Debtor drew down twice against RLA. As of the Filing Date Debtor was indebted to SFIP in the amounts of $48,235.58 and $33,091.38 in respect of said draw downs. In connection with the RLA the Debtor executed a Security Agreement (the "SFIP Security Agreement"). The SFIP Security Agreement, granted SFIP a lien, *inter alia,* in substantially all cash assets of the Debtor (the "SFIP Cash Collateral"). Pursuant to  the RLA, the SFIP Security Agreement, and all other documents evidencing or

securing same (the "SFIP Loan Documents"), the Debtor granted SFIP a lien and security interest in the SFIP Cash Collateral.  SFIP appears to have duly perfected a lien on the SFIP Cash Collateral by a filing UCC-1 financing statement with the New York State Department of State on December 4, 2020. The income generated by the SFIP Cash Collateral is cash collateral ("Cash Collateral") within the meaning of the Bankruptcy Code.  Debtor reserves all rights and remedies to dispute that any SFIP lien exists in fact and law, and that same, if it does exist, is valid and/or perfected.

H.  Prior to the Filing Date, the Debtor executed an SBA EIDL (the "SBA Loan") in favor of the United States Small Business Association.  Debtor borrowed not less than $141,228 under the SBA Loan.  In connection with the SBA Loan the Debtor executed a Security Agreement (the "SBA Security Agreement").  The SBA Security Agreement, granted SBA a lien, *inter alia,* in substantially all cash assets of the Debtor (the "SBA Cash Collateral"). Pursuant to the SBA Loan, the SBA Security Agreement, and all other documents evidencing or securing same (the "SBA Loan Documents"), the Debtor granted SBA a lien and security interest in the SBA Cash Collateral.  SBA appears to have a duly perfected a lien on the SBA Cash Collateral by a filing UCC-1 financing statement with the New York State Department of State on August 10, 2020. The income generated by the SBA Cash Collateral is cash collateral ("Cash Collateral") within the meaning of the Bankruptcy Code.

I.  As of August 1, 2024, the unpaid principal balance due under the SBA Loan was $141,228. The Debtor expects to expend cash, including SBA's Cash Collateral, for the payment of current and future operating expenses of the Debtor, including payroll, taxes, utilities, insurance, obligations owed to SBA and other charges.

J.     Consideration of this Stipulation constitutes a "core proceeding" as defined in 28 U.S.C. §§157(b)(2)(A), (K), (M), and (O).

K.     This Court has jurisdiction over this proceeding, the parties and property affected hereby pursuant to 28 U.S.C. §§157 and 1334.

L.     No committee has been appointed to date in this case.

M.     The Debtor asserts that "good cause" has been shown for the entry of this Stipulation. Among other reasons, approval of this Stipulation will (i) minimize disruption of the Debtor's business and operations, (ii) permit the Debtor to meet its obligations and expenses, and (iii) be in the best interests of the Debtor, its creditors and other parties-in-interest towards maintaining going concern value for purposes of a reorganization.

N.     SBA and SFIP received due notice of Debtor's motion authorizing the use of cash collateral and of the September 24, 2024 hearing held thereon, and have neither objected nor appeared to the said motion.

**NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED** between the Debtor, Flushing Bank and Amazon Capital Services:

1.     The foregoing recitals are incorporated by reference, are true and correct and binding on the Debtor.  Subject to the terms and conditions of this Order, the Debtor is hereby empowered and authorized, in accordance with Section 363(c)(2) of the Bankruptcy Code to use Secured Lenders' Cash Collateral for required business purposes, effective as of the date of entry hereof.  The Debtor has provided a budget that projects its monthly expenses as set forth in Exhibit A hereto (the "Budget").  The Debtor is authorized to use the cash collateral solely in accordance with the Budget and the commitments hereunder to Secured Lenders, and solely

during the period through October 31, 2024 (the "Interim Period") pending the conclusion of the final hearing on the Motion;

        2.     Flushing Bank and Amazon Capital Services consent to the Debtor's use of Cash Collateral according to the terms of this Stipulation, and the Budget, specifically including:

        a.     The Cash Collateral is, and for all purposes herein (but reserving Debtor's right to contest any lien addressed herein as to sufficiency, validity, amount or perfection), will be deemed to constitute cash collateral in which the Secured Lenders have an interest under 11 U.S.C. §363(a) and (c) (2).

        b.     Debtor may use Cash Collateral of the Secured Lenders to pay for the ordinary and necessary post-petition operating expenses as categorized in the proposed Budget attached hereto as Exhibit "A".  Ordinary and necessary post-petition expenses shall be defined as those items set forth in the Budget attached hereto as Exhibit "A" and shall be amounts which do not exceed the amount specified therein for each category of expenses by more than ten percent (10.00%).  The Debtor shall obtain the written permission of ACS and Flushing Bank before making or incurring any obligation or making or incurring any expenditures from the Cash Collateral Account, as hereinafter defined, in excess of said ten percent (10.00%).  If the Debtor and the ACS and Flushing Bank cannot reach an agreement with respect to whether the Debtor shall be allowed to use Cash Collateral of Flushing Bank and ACS for expenses not included in the categories included in the proposed monthly budget, the Debtor may submit the matter to the Court by motion for determination of the issue.

        c.     No Cash Collateral shall be used in payment of any kind whatsoever to Debtor's

officers, directors, shareholders, employees (except and unless provided for in the Budget, as salary), relatives or any representatives or affiliates thereof, or any insiders as that term is defined by 11 U.S.C. §101(31).

       d.      The Debtor shall not make any capital improvements to its leasehold.

       e.      Notwithstanding the above, the Debtor may use Cash Collateral on an emergency basis, in an amount not to exceed, in any one month, the sum of $1,000.00 per month; provided, however, that the Debtor shall notify the Flushing Bank and ACS within 24 hours after any such expenditures are made. The Debtor shall also promptly provide the Flushing Bank and ACS with copies of invoices paid with respect to such emergency expenditures. The Debtor shall obtain the written permission of Flushing Bank and ACS before making or incurring any obligation or making or incurring any expenditures from the Cash Collateral Account (as defined below), in excess of the $1,000 per month allowance. If the Debtor and Flushing Bank and ACS cannot reach an agreement with respect to whether the Debtor shall be allowed to use Cash Collateral of Flushing Bank and ACS on an emergency basis, Debtor may submit the matter to the Court by motion for determination of the issue.

       f.      The Debtor shall maintain property, casualty, and liability insurance coverage as provided in the Loan Documents in connection with the Collateral. Debtor shall promptly furnish Flushing Bank and ACS with proof of such insurance. The Debtor warrants and represents to Flushing Bank and ACS that its insurance policies (collectively, the "Policies") are in effect and that it will maintain casualty, liability and all other coverage. Without limiting the responsibilities or duties of the Debtor established by this Stipulation, the Bankruptcy Code, or otherwise, the Debtor shall timely pay all premium amounts for the Policies as they become due. In the event that the insurance coverage for the Collateral is allowed to lapse for any reason,

Debtor agrees that Flushing Bank and ACS may, notwithstanding any applicable provision of Title 11, United States Bankruptcy Code, force-place insurance coverage. The Debtor further agrees that in the event that Flushing Bank and ACS is/are required to obtain force-placed insurance coverage, Flushing Bank and/or ACS may provide the Debtor with a demand to reimburse Flushing Bank and/or ACS for such coverage.

g.    The Debtor shall remain current on all post-petition tax obligations arising out of its ownership and/or operation of its business. Debtor agrees that evidence of payment of all post-petition tax obligations shall be tendered immediately to Flushing Bank and ACS upon request therefore. Flushing Bank and/or ACS may advance such funds and seek immediate reimbursement from Debtor notwithstanding any applicable provision of Title 11 of the United States Bankruptcy Code.

h.    The Debtor shall remain current on all post-petition obligations to Flushing Bank and ACS.

i.    To satisfy the right of Secured Lenders to adequate protection of their interest in the Debtor's Cash Collateral, within three (3) days after this Stipulation is approved by the Court, the Debtor shall remit the sum of $7,000.00 to Flushing Bank, the sum of $15,000.00 to ACS, the sum of $2,000 to SFIP and the sum of $781 to SBA. On October 25, 2024, the Debtor shall remit additional adequate protection payments in the sum of $7,000.00 to Flushing Bank, the sum of $15,000.00 to ACS, the sum of $2,000 to SFIP and the sum of $781 to SBA. All adequate protection payments hereunder shall be applied in the manner provided for in the in Secured Lenders' respective loan instruments. The Debtor shall maintain all remaining Cash Collateral in segregated accounts for taxes, payroll and otherwise as required by the Bankruptcy Code, and by the Office of the United States Trustee for the Southern District of New York.

8

To further satisfy the right of Secured Lenders to adequate protection of their interests in the Debtor's Cash Collateral, Secured Lenders are hereby granted, pursuant Section 361, 363, and 552(b) of the Bankruptcy Code, valid, attached, choate, enforceable, perfected, post-petition security interest and lien in and against all post-petition assets of the Debtor of the same character and type, to the same nature, extent, validity, and priority that existed prepetition, and to the extent of diminution in value of Secured Lenders' collateral caused by the Debtor's use of Cash Collateral. In addition, Secured Lenders shall hold allowed administrative claims under Section 507(b) of the Bankruptcy Code with respect to the adequate protection obligations of the Debtor to the extent that the replacement liens and post-petition collateral do not adequately protect the diminution in value of the interests of Secured Lenders in their prepetition collateral. Such administrative claims shall be junior and subordinate only to any superpriority claim of the kind ordered by the Court and specified in Section 364 of the Bankruptcy Code. The administrative claims shall be payable from and have recourse to all prepetition and post-petition property of the Debtor and all proceeds thereof. The liens on post-petition collateral shall be in addition to any prepetition liens held by the Secured Lenders, and shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of this case. As additional adequate protection to Secured Lenders during the pendency of this Interim Order, Debtor shall make the payments to Secured Lenders referenced in paragraph 2(i) above, and such payments shall be deemed included within Debtor's cash collateral budget submitted with the Motion. Commencing the week of September 23, 2024, Amazon Capital Services or its affiliates shall be entitled to deduct the monthly adequate protection payment from Debtor's seller account maintained on the Amazon marketplace platform on a monthly basis. Nothing contained herein shall be deemed a waiver by Secured Lenders from seeking further or additional adequate

FCD / #1807883v1 / 0142140 - 084049

protection of their collateral, asserting objections to the Debtor's further use of Cash Collateral, pursuing any other rights or remedies available to them under law or equity, or of their right to challenge or object to the extent, existence and/or priority of the purported security interests held by and of the Secured Lenders. The Debtor is authorized to perform its obligations under the Business Solutions Agreement or similar agreement ("BSA") with Amazon.com Services, LLC ("Amazon.com") which governs Debtor's ability to sell products on the "Amazon Store" in the ordinary course of Debtor's business. In accordance with, and subject to, the provisions of this Order, Amazon.com and its affiliates are further authorized to continue netting fees, expenses, and reimbursements (whether or not related to pre- or post-petition sales) from Debtor's sales proceeds and remit, to the Debtor, Debtor's net proceeds less the adequate protection payments owed to Amazon Capital under the terms of this Order.

4.      To the extent it has not already done so, the Debtor shall immediately set up and maintain separate and segregated accounts for all revenue generated by the Collateral, which segregated accounts shall include all gross revenue and cash collateral existing as of the Filing Date, or collected since the filing of this bankruptcy case (the "Cash Collateral Account"). Information regarding the Cash Collateral Account, including the bank name, the address and the account numbers will be provided to Flushing Bank by the Debtor immediately upon execution of the Stipulation.  The Debtor agrees to disburse funds from the Cash Collateral Account only in accordance with the terms of this Stipulation.  To the extent there is any surplus after payment of its operating expenses, those monies shall remain in the Debtor's Cash Collateral Account until further order of the Court.

5.      The Debtor is prohibited from commingling the Cash Collateral with monies from any other sources.  Cash Collateral is to remain in the Cash Collateral Account until expended

under the terms of the Stipulation.

6.      Except as otherwise provided for herein, disbursements to Secured Lenders under paragraph 2(i) shall be accomplished by delivery of a check drawn on the Cash Collateral Account delivered to the Secured Lenders, at the addresses provided for in paragraph 31 hereof, or by wire transfer on and Secured Lender's instruction or by other payment method as may be approved by any Secured Lender.

7.      Debtor shall timely file interim statements and monthly operating reports with the Court and the Office of the United States Trustee.  Debtor shall also provide any requesting Secured Lender on or before the fifteenth day of each month with copies of all financial information and reports, prepared on or after the Filing Date, that the Debtor files with the Court and the Office of the United States Trustee, prepared for internal review or audit, or delivered to any third parties whatsoever, including, but not limited to, monthly operating reports, interim statements, operating reports, bankruptcy schedules, financial statements and accountings.

8.      Upon reasonable notice, but no less than twenty-four (24) hours written notice from any Secured Lender, the Debtor shall provide such other financial information as it may request, including but not limited to providing access for auditors to the Debtor's books and records, including but not limited to, all financial records relating to the operation or condition of the Collateral, whether that information is maintained in the hands of the Debtor, affiliates of the Debtor, or the accountants, attorneys, or agents of any of them.

9.      Upon reasonable notice, but no less than twenty-four (24) hours written notice from a Secured Lender, the Debtor shall make any Collateral available for one or more physical inspections, at the Secured Lender's sole and absolute discretion, to conduct and complete appraisals and inspection of same, and analysis of any sort with respect to the current condition

or prospective use of any Secured Lender's Collateral.

10.     The Debtor acknowledges and agrees that as of the Filing Date: (a) the Flushing Note is a valid, binding and non-avoidable agreement and constitutes an outstanding obligation of the Debtor; (b) the indebtedness due and payable to Flushing Bank as of August 1, 2024, is approximately $716,530.81, plus all applicable interest, costs, fees and expenses provided for in the Note (the "Flushing Bank Claim"); (c) Flushing Bank holds an allowed claim against the Debtor's estate in the full amount of the Flushing Bank Claim, which is secured fully by the Collateral. This provision is without prejudice to the rights and remedies of other interested parties in this case to challenge the validity and priority of the Flushing Bank Claim and the validity and priority of Flushing Bank's lien, including ACS, other Secured Creditors, any official committee of unsecured creditors appointed in this case, and if no such Committee is established, then to any unsecured creditor of the Debtor's Estate.

11.     Notwithstanding any provision herein, the Debtor's right to use Secured Lender's Cash Collateral terminates on October 31, 2024 unless extended by stipulation or order. Moreover, nothing in this Stipulation shall constitute any commitment to make any additional loans or extend any further credit or other financial accommodations to or for the benefit of the Debtor.

12.     Additionally, unless agreed otherwise in writing, the termination date of this Stipulation ("Termination Date") shall be defined as the earliest of: (a) the date an order is entered by the Court granting a motion to convert the above-captioned case to a case under Chapter 7 of the Code; (b) the date an Order is entered by the Court granting the Flushing Bank, ACS or any other creditor, relief from the automatic stay in order to initiate or continue foreclosure, seizure, repossession or other proceedings against the Debtor's Collateral; (c) the

date an order is entered by the Court granting a motion to dismiss the above-captioned case; (d) the date an order is entered by the Court granting a motion to appoint a trustee in the above-captioned case; (e) the date on which the order approving the Stipulation is reversed, revoked, modified, amended, stayed, rescinded or supplemented; and (f) the date of confirmation of a plan of reorganization.

13.     Flushing Bank and ACS, and the Debtor agree that Secured Lenders, from and after the Filing Date, are entitled to additional security to adequately protect Secured Lenders rights in their Collateral.  In order to secure Secured Lenders so as to adequately protect the Secured Lenders rights in their respective  Collateral (including Cash Collateral), Secured Lenders are hereby granted valid, binding, enforceable and perfected continuing replacement liens and security interests in and on any and all real and personal property, tangible and intangible, equipment, accounts receivable or rents of the Debtor, including all post-petition contract rights, agreements or the like, and all other assets of the Debtor and the proceeds  thereof, of any kind or nature, wherever located, now owned or hereafter acquired, to the same extent, validity and priority held by Secured Lenders on the Filing Date, whether or not constituting pre-petition collateral or post-petition collateral (collectively referred to herein as the "Estate Collateral"). Any such lien is subject only to: (i) the fees of the United States Trustee pursuant to 28 U.S.C. §1930 incurred beginning as of the Filing Date during the term of this Stipulation; and (b) any valid, duly perfected, unavoidable liens existing at the time of the bankruptcy, all in order of priority as of  filing (collectively, (a)-(b), the "Carve-Out").

14.     Secured Lenders' Cash Collateral shall not, directly or indirectly, be used to pay administrative expenses of the Debtor and its estate except as expressly set forth in this Stipulation.

15.     The entry of this Stipulation is without prejudice to, and does not constitute a waiver of, expressly or impliedly, or otherwise impair, any of the rights, claims or privileges (whether legal, equitable or otherwise) of any party hereto under the Bankruptcy Code or under non-bankruptcy law, including any right to seek relief from the automatic stay under §362 of Title 11 of the United States Bankruptcy Code and to  pursue direct claims against any guarantor(s) of the Flushing Note other Secured obligation, nor shall any Secured Lender need to obtain leave from any Court to do so.

16.     During the term of the Stipulation, Secured Lenders may continue to charge the Debtor with interest, reasonable fees (including attorneys' fees), if any, as provided in the Loan Documents.  During the term of the Stipulation and consistent with the Bankruptcy Code, the Debtor shall fully perform and comply with all of its covenants and agreements set forth in the loan instruments addressed herein, which are hereby reaffirmed and ratified by the Debtor.

17.     Except as otherwise provided herein, the Debtor shall be enjoined and prohibited from, at any time during this Chapter 11 Case, granting security interests or liens in the Estate Collateral (including the Cash Collateral) or any portion thereof, to any other parties pursuant to §364(d) of the Bankruptcy Code or otherwise, which security interests or liens are senior to or on a parity with the security interests or liens of ACS and Flushing Bank, as the case may be  without order of the Court after notice and hearing.

18.     The Debtor shall execute and deliver to any Secured Lender all such agreements, financing statements, instruments and other documents as such Secured Lender may reasonably request to evidence, confirm, validate or perfect its security interests and liens granted pursuant hereto.

19.     This Order shall be sufficient and conclusive evidence of the priority, perfection and validity of all of the security interests in and liens upon the property of the Estate of the Debtor granted to ACS and Flushing Bank as set forth herein, without the necessity of filing, recording or serving any financing statements or other documents which may otherwise be required under federal or state law in any jurisdiction or the taking of any other action to validate or perfect the security interests and liens granted to ACS and Flushing Bank in this Stipulation and the Flushing Note and the ACS Note.  If ACS or Flushing Bank shall, in their discretion, elect for any reason to file any such security interests and liens, the Debtor is hereby authorized and directed to execute, or cause to be executed, all such financing statements or other documents upon ACS's or Flushing Bank's request and the filing, recording or service thereof (as the case may be) of such financing statement or similar documents shall be deemed to have been made at the time of and on the Filing Date.  ACS or Flushing Bank may, in their discretion, file a copy of this Stipulation in any filing or recording office in any County or other jurisdiction in which the Debtor has real or personal property and, in such event, the subject filing or recording officer is authorized and directed to file or record such certified copy of this Stipulation.

20.     Secured Lenders shall be entitled to the protection of §363(a) of the Bankruptcy Code with respect to diminution of Collateral in the event that Collateral decrease in value during the pendency of this Chapter 11 Case, in the event that this Stipulation or any authorization contained herein is vacated, reversed or modified on appeal or otherwise by any court of competent jurisdiction.

21.     The provisions of this Stipulation and any actions taken pursuant hereto shall survive entry of any order dismissing this case, converting the Debtor's Chapter 11 Case to one

under Chapter 7, or which may be entered confirming or consummating any plan of reorganization of the Debtor's estate, and the terms and provisions of this Stipulation as well as the priorities in payment, liens, and security interests granted pursuant to this Stipulation shall continue in this or any superseding cases under the Bankruptcy Code, and such priorities in payment, liens and security interests shall maintain their priority as provided by this Stipulation until all indebtedness due Secured Lenders is indefeasibly satisfied and discharged.  Nothing in this Stipulation shall, however, impair the provisions of §726(b) of the Bankruptcy Code.

22.     The Debtor grants Secured Lenders, their agents, designees or professional persons, the right to inspect the Collateral, including reviewing the Debtor's books and records upon reasonable notice.  The Debtor shall cooperate fully with any such inspection of the Collateral.

23.     Except as provided herein, the Debtor agrees to continue to comply with all the non-monetary obligations set forth in the loan instruments addressed hereunder.

23.     Failure by the Debtor to fulfill any of the obligations set forth in this Stipulation shall constitute an event of default ("Event of Default"), including, but not limited to, making all payments set forth herein.  Should an Event of Default occur, any Secured Lender may file and serve by mail or by email, an affidavit (the "Secured Lender Affidavit"), identifying the Event(s) of Default, upon Debtor's counsel, the Office of the U.S. Trustee and all parties having filed a Notice of Appearance in this case (the "Appearing Parties").  The Debtor shall have five (5) business days to either cure the Event of Default or the Debtor or any other party provided with notice in accordance to this decretal paragraph may file a counter-affidavit (the "Counter-Affidavit") opposing the allegations raised in the Secured Lender Affidavit with specificity.  If a Counter-Affidavit is filed, then a hearing will be scheduled at the earliest possible convenience

16

of the Court on no less than two (2) business days written notice to the Debtor, Secured lender, the Appearing Parties, and the Office of the U.S. Trustee (the "Interested Parties") to determine whether an Event of Default has occurred and whether any Secured Lender is entitled to relief from the automatic stay enabling it to take possession of its Collateral. If, within five (5) business days after the service of the Secured Lender Affidavit, the Debtor fails to cure the Event of Default or if the Debtor or any of the other Interested Parties fail to serve upon counsel for Secured Lender a Counter-Affidavit and file the Counter-Affidavit with the Court, then an ex parte order shall be entered terminating the Debtor's right to use Cash Collateral and modifying the automatic stay to enable Secured Lender to take possession of its Collateral (the "Termination Order"). Nothing contained herein shall be construed to preclude any Secured Lender from filing a motion seeking relief from the automatic stay or from seeking any other appropriate relief in the Debtors' bankruptcy cases at any other time during this Case.

24.     This Stipulation is without prejudice to the rights and remedies of the Office of the United States Trustee and without prejudice to the rights and remedies of any official committee of unsecured creditors appointed in this case, and if no such Committee is established, then to any unsecured creditor of the Debtor's Estate.

25     The Debtor shall, at its sole expense, seek Bankruptcy Court approval of this Stipulation and Order.

26.     Except as otherwise provided in this Stipulation, the terms and conditions of the loan instruments shall remain in full force and effect, and the Secured Lenders shall have all the rights provided therein, subject to the provisions of the Bankruptcy Code and any Orders of the Bankruptcy Court.

FCD / #1807883v1 / 0142140 - 084049

27.     The provisions of this Stipulation shall be binding upon the Debtor and its respective successors and assigns, including any trustee hereinafter appointed in the within Chapter 11 case or any subsequent Chapter 7 case.

28.     The Debtor, the Secured Lenders and all other parties are hereby authorized and directed to execute all documents, notes, instruments, agreements and/or other items necessary to carry out the purposes of this Stipulation and to take any action necessary or appropriate to perfect liens created in this Stipulation.

29.     The Debtor shall provide the Secured Lenders with a statement of cash flow, and income and expenses, as may from time to time be reasonably requested by any Secured Lender in sufficient detail to enable assessment thereof.

30.     The parties agree that time is of the essence with respect to all terms and conditions of this Stipulation.

31.     Any notices required to be given under this Stipulation shall be given by facsimile transmission and Federal Ex overnight delivery as follows:

To the Debtor to:            Global Supplies NY Inc.
                             138 31st Street
                             Brooklyn, New York 11232
                             Attn: Samuel Y. Seidenfeld

With a copy to:              Paul Hollender, Esq.
                             Corash & Hollender, P.C.
                             1200 South Avenue, Suite 201
                             Staten Island, NY 10314

If to Flushing Bank to:      Flushing Bank
                             220 RXR Plaza
                             Uniondale, New York 11556
                             Attn: Thomas Clemens

With a copy to:              Frank C. Dell'Amore, Esq.
                             Jaspan Schlesinger Narendran LLP

300 Garden City Plaza
Garden City, NY  11530

If to ACS to:             Amazon Capital Services
                          c/o Michael J. Gearin
                          Brian Peterson
                          K&L Gates LLP
                          925 Fourth Avenue, Suite 2900
                          Seattle, WA  98104

If to the U.S. Trustee

**Office of the United States Trustee**
Reeema Lateef, Esq.
Eastern District of NY (Brooklyn)
Alexander Hamilton Custom House
One Bowling Green
Room 510
New York, NY 10004-1408

32.     This Stipulation may be executed in counterparts and by electronic signatures and each such counterparts and signatures shall be deemed to be an original, but all such counterparts shall together constitute but one and the same agreement.

33.     This Stipulation is subject to a carve out for fees payable to the United States Trustee pursuant to 28 U.S.C. §1930(a)(6).

34.     This Stipulation sets forth the entire agreement between the parties with respect to the matters stated herein and supersedes all prior discussions, negotiations and agreements, written or oral, and may not be modified except by a writing signed by the Debtor and Flushing Bank.

35.     This Stipulation shall be effective immediately upon approval by the Court.

SO STIPULATED:

FCD / #1807883v1 / 0142140 - 084049

DATED:   Garden City, New York
        October 1, 2024

                                       Jaspan Schlesinger Narendran
                                       LLP *Attorneys for Flushing Bank*
                                       By: Frank C. Dell'Amore (per MS
                                       with authoriity)
                                          Frank C. Dell'Amore, Esq.
                                          300 Garden City Plaza
                                          Garden City, NY  11530

DATED:   Brooklyn, New York
        _October 1__, 2024

DATED: Staten Island, NY
        October 1, 2024

                                         Corash & Hollender, P.C.
                                       Attorneys for Debtor
                                       By*: /s/Paul Hollender*
                                          Paul Hollender, Esq
                                       1200 South Avenue, Suite 201
                                       Staten Island, NY 10314

DATED:  Seattle, Washington
        October 1, 2024

                                       K&L Gates LLP
                                       *Attorneys for* Amazon Capital Services
                                       By: Michael J. Gearin (per MS with
                                       authority)
                                       Michael J. Gearin, Esq.
                                       925 Fourth Avenue,
                                       Suite2900
                                       Seattle, WA  98104

SO ORDERED:

_____
UNITED STATES BANKRUPTCY JUDGE

**<u>EXHIBIT A</u>**
**Budget**

| | Week 1 | Week 2 | Week 3 |
|---|---|---|---|
| **Income** | | | |
| Sales | $ 105,000.00 | $ 140,000.00 | $ 155,000.00 |
| **Total Income** | $ 105,000.00 | $ 140,000.00 | $ 155,000.00 |
| **Cost of Goods Sold** | | | |
| Cost of Goods Sold | $ 89,250.00 | $ 120,400.00 | $ 133,300.00 |
| **Total Cost of Goods Sold** | **$ 89,250.00** | **$ 119,000.00** | **$ 133,300.00** |
| **Gross Profit** | **$ 15,750.00** | **$ 21,000.00** | **$ 21,700.00** |
| **Expenses** | | | |
| Employee benefits | | | |
| Health insurance & accident plans | $ 352.49 | $ 352.49 | $ 352.49 |
| **Total Employee benefits** | **$ 352.49** | **$ 352.49** | **$ 352.49** |
| General business expenses | | | |
| Bank fees & service charges | $ 50.00 | $ 50.00 | $ 50.00 |
| Memberships & subscriptions | $ 500.00 | $ 16.00 | $ 16.00 |
| **Total General business expenses** | **$ 550.00** | **$ 66.00** | **$ 66.00** |
| Insurance | $ 505.00 | $ 505.00 | $ 505.00 |
| Liability insurance | $ 400.00 | $ 400.00 | $ 400.00 |
| **Total Insurance** | **$ 905.00** | **$ 905.00** | **$ 905.00** |
| Interest paid | | | |
| Legal & professional | $ 400.00 | $ 400.00 | $ 400.00 |
| Accounting fees | $ 300.00 | $ 300.00 | $ 300.00 |
| Legal Fees | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 |
| **Total Legal & professional** | **$ 1,950.00** | **$ 1,950.00** | **$ 1,950.00** |
| Meals | $ 25.00 | $ 25.00 | $ 25.00 |
| Office expenses | $ 65.00 | $ 65.00 | $ 65.00 |
| Merchant account fees | $ 20.00 | $ 20.00 | $ 20.00 |
| Office supplies | $ 40.00 | $ 40.00 | $ 40.00 |
| Shipping & postage | $ 150.00 | $ 220.00 | $ 260.00 |
| Software & apps | $ 600.00 | $ 600.00 | $ 600.00 |
| **Total Office expenses** | **$ 875.00** | **$ 945.00** | **$ 985.00** |
| **Outside Services** | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 |
| **Packaging Supplies** | $ 295.00 | $ 450.00 | $ 550.00 |
| **Payroll expenses** | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 |
| **Rent** | $ 1,646.00 | $ 1,646.00 | $ 1,646.00 |
| Equipment rental | $ - | $ - | $ - |
| **Total Rent** | **$ 1,646.00** | **$ 1,646.00** | **$ 1,646.00** |
| **Repairs & maintenance** | $ 25.00 | $ 25.00 | $ 25.00 |
| **Shipping** | $ 600.00 | $ 750.00 | $ 825.00 |
| **Telephone** | $ 75.00 | $ 75.00 | $ 75.00 |
| **Travel** | $ 50.00 | $ 50.00 | $ 250.00 |
| **Utilities** | $ 465.00 | $ 465.00 | $ 465.00 |
| Disposal & waste fees | $ 13.00 | $ 13.00 | $ 13.00 |
| Internet & TV services | $ 30.00 | $ 30.00 | $ 30.00 |
| **Total Utilities** | **$ 508.00** | **$ 508.00** | **$ 508.00** |
| **Vehicle expenses** | $ 145.00 | $ 145.00 | $ 145.00 |

| | | | | | |
|---|---|---|---|---|---|
| **Total Expenses** | $ | 22,993.49 | $ | 22,884.49 | $ | 23,299.49 |
| **Net Operating Income** | $ | (7,243.49) | $ | (1,884.49) | $ | (1,599.49) |
| **Net Income** | $ | (7,243.49) | $ | (1,884.49) | $ | (1,599.49) |

# Global Supplies NY Inc
## Projected Income Statement

| | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 | Week 9 |
|---|---|---|---|---|---|---|
| | $ 163,000.00 | $ 170,000.00 | $ 185,000.00 | $ 200,000.00 | $ 200,000.00 | $ 220,000.00 |
| | $ 163,000.00 | $ 170,000.00 | $ 185,000.00 | $ 200,000.00 | $ 200,000.00 | $ 220,000.00 |
| | | | | | | |
| | $ 140,180.00 | $ 146,200.00 | $ 159,100.00 | $ 172,000.00 | $ 172,000.00 | $ 189,200.00 |
| | **$ 140,180.00** | **$ 146,200.00** | **$ 159,100.00** | **$ 172,000.00** | **$ 172,000.00** | **$ 189,200.00** |
| | **$ 22,820.00** | **$ 23,800.00** | **$ 25,900.00** | **$ 28,000.00** | **$ 28,000.00** | **$ 30,800.00** |
| | | | | | | |
| | $ 352.49 | $ 352.49 | $ 352.49 | $ 352.49 | $ 352.49 | $ 352.49 |
| | **$ 352.49** | **$ 352.49** | **$ 352.49** | **$ 352.49** | **$ 352.49** | **$ 352.49** |
| | | | | | | |
| | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 | $ 50.00 |
| | $ 16.00 | $ 16.00 | $ 16.00 | $ 16.00 | $ 16.00 | $ 16.00 |
| | **$ 66.00** | **$ 66.00** | **$ 66.00** | **$ 66.00** | **$ 66.00** | **$ 66.00** |
| | $ 505.00 | $ 505.00 | $ 505.00 | $ 505.00 | $ 505.00 | $ 505.00 |
| | $ 400.00 | $ 400.00 | $ 400.00 | $ 400.00 | $ 400.00 | $ 400.00 |
| | **$ 905.00** | **$ 905.00** | **$ 905.00** | **$ 905.00** | **$ 905.00** | **$ 905.00** |
| | | | | | | |
| | $ 400.00 | $ 400.00 | $ 400.00 | $ 400.00 | $ 400.00 | $ 400.00 |
| | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 | $ 300.00 |
| | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 | $ 1,250.00 |
| | **$ 1,950.00** | **$ 1,950.00** | **$ 1,950.00** | **$ 1,950.00** | **$ 1,950.00** | **$ 1,950.00** |
| | $ 25.00 | $ 25.00 | $ 25.00 | $ 25.00 | $ 25.00 | $ 25.00 |
| | $ 65.00 | $ 65.00 | $ 65.00 | $ 65.00 | $ 65.00 | $ 65.00 |
| | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 | $ 20.00 |
| | $ 40.00 | $ 40.00 | $ 40.00 | $ 40.00 | $ 40.00 | $ 40.00 |
| | $ 295.00 | $ 320.00 | $ 365.00 | $ 440.00 | $ 440.00 | $ 495.00 |
| | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 | $ 600.00 |
| | **$ 1,020.00** | **$ 1,045.00** | **$ 1,090.00** | **$ 1,165.00** | **$ 1,165.00** | **$ 1,220.00** |
| | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 | $ 5,500.00 |
| | $ 600.00 | $ 620.00 | $ 720.00 | $ 795.00 | $ 795.00 | $ 850.00 |
| | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 10,000.00 | $ 11,000.00 |
| | $ 1,646.00 | $ 1,646.00 | $ 1,646.00 | $ 1,646.00 | $ 1,646.00 | $ 1,646.00 |
| | $ - | $ - | $ - | $ - | $ - | $ - |
| | **$ 1,646.00** | **$ 1,646.00** | **$ 1,646.00** | **$ 1,646.00** | **$ 1,646.00** | **$ 1,646.00** |
| | $ 25.00 | $ 25.00 | $ 25.00 | $ 25.00 | $ 25.00 | $ 25.00 |
| | $ 875.00 | $ 925.00 | $ 975.00 | $ 1,100.00 | $ 1,100.00 | $ 1,400.00 |
| | $ 75.00 | $ 75.00 | $ 75.00 | $ 75.00 | $ 75.00 | $ 75.00 |
| | $ 50.00 | $ 50.00 | $ 250.00 | $ 50.00 | $ 250.00 | $ 50.00 |
| | $ 465.00 | $ 465.00 | $ 465.00 | $ 465.00 | $ 465.00 | $ 465.00 |
| | $ 13.00 | $ 13.00 | $ 13.00 | $ 13.00 | $ 13.00 | $ 13.00 |
| | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 | $ 30.00 |
| | **$ 508.00** | **$ 508.00** | **$ 508.00** | **$ 508.00** | **$ 508.00** | **$ 508.00** |
| | $ 145.00 | $ 145.00 | $ 145.00 | $ 145.00 | $ 145.00 | $ 145.00 |

| $ | 23,234.49 | $ | 23,329.49 | $ | 23,724.49 | $ | 23,799.49 | $ | 23,999.49 | $ | 25,209.49 |
|---|-----------|---|-----------|---|-----------|---|-----------|---|-----------|---|-----------|
| $ | (414.49) | $ | 470.51 | $ | 2,175.51 | $ | 4,200.51 | $ | 4,000.51 | $ | 5,590.51 |
| $ | (414.49) | $ | 470.51 | $ | 2,175.51 | $ | 4,200.51 | $ | 4,000.51 | $ | 5,590.51 |

| | Week 10 | | Week 11 | | Week 12 | | Week 13 |
|---|---|---|---|---|---|---|---|
| $ | 220,000.00 | $ | 220,000.00 | $ | 220,000.00 | $ | 220,000.00 |
| $ | 220,000.00 | $ | 220,000.00 | $ | 220,000.00 | $ | 220,000.00 |
| | | | | | | | |
| $ | 189,200.00 | $ | 189,200.00 | $ | 189,200.00 | $ | 189,200.00 |
| **$** | **189,200.00** | **$** | **189,200.00** | **$** | **189,200.00** | **$** | **189,200.00** |
| **$** | **30,800.00** | **$** | **30,800.00** | **$** | **30,800.00** | **$** | **30,800.00** |
| | | | | | | | |
| | | | | | | | |
| $ | 352.49 | $ | 352.49 | $ | 352.49 | $ | 352.49 |
| **$** | **352.49** | **$** | **352.49** | **$** | **352.49** | **$** | **352.49** |
| | | | | | | | |
| $ | 50.00 | $ | 50.00 | $ | 50.00 | $ | 50.00 |
| $ | 16.00 | $ | 16.00 | $ | 16.00 | $ | 16.00 |
| **$** | **66.00** | **$** | **66.00** | **$** | **66.00** | **$** | **66.00** |
| $ | 505.00 | $ | 505.00 | $ | 505.00 | $ | 505.00 |
| $ | 400.00 | $ | 400.00 | $ | 400.00 | $ | 400.00 |
| **$** | **905.00** | **$** | **905.00** | **$** | **905.00** | **$** | **905.00** |
| | | | | | | | |
| $ | 400.00 | $ | 400.00 | $ | 400.00 | $ | 400.00 |
| $ | 300.00 | $ | 300.00 | $ | 300.00 | $ | 300.00 |
| $ | 1,250.00 | $ | 1,250.00 | $ | 1,250.00 | $ | 1,250.00 |
| **$** | **1,950.00** | **$** | **1,950.00** | **$** | **1,950.00** | **$** | **1,950.00** |
| $ | 25.00 | $ | 25.00 | $ | 25.00 | $ | 25.00 |
| $ | 65.00 | $ | 65.00 | $ | 65.00 | $ | 65.00 |
| $ | 20.00 | $ | 20.00 | $ | 20.00 | $ | 20.00 |
| $ | 40.00 | $ | 40.00 | $ | 40.00 | $ | 40.00 |
| $ | 495.00 | $ | 495.00 | $ | 495.00 | $ | 495.00 |
| $ | 600.00 | $ | 600.00 | $ | 600.00 | $ | 600.00 |
| **$** | **1,220.00** | **$** | **1,220.00** | **$** | **1,220.00** | **$** | **1,220.00** |
| $ | 5,500.00 | $ | 5,500.00 | $ | 5,500.00 | $ | 5,500.00 |
| $ | 850.00 | $ | 850.00 | $ | 850.00 | $ | 850.00 |
| $ | 11,000.00 | $ | 11,000.00 | $ | 11,000.00 | $ | 11,000.00 |
| $ | 1,646.00 | $ | 1,646.00 | $ | 1,646.00 | $ | 1,646.00 |
| $ | - | $ | - | $ | - | $ | - |
| **$** | **1,646.00** | **$** | **1,646.00** | **$** | **1,646.00** | **$** | **1,646.00** |
| $ | 25.00 | $ | 25.00 | $ | 25.00 | $ | 25.00 |
| $ | 1,400.00 | $ | 1,400.00 | $ | 1,400.00 | $ | 1,400.00 |
| $ | 75.00 | $ | 75.00 | $ | 75.00 | $ | 75.00 |
| $ | 50.00 | $ | 250.00 | $ | 50.00 | $ | 250.00 |
| $ | 465.00 | $ | 465.00 | $ | 465.00 | $ | 465.00 |
| $ | 13.00 | $ | 13.00 | $ | 13.00 | $ | 13.00 |
| $ | 30.00 | $ | 30.00 | $ | 30.00 | $ | 30.00 |
| **$** | **508.00** | **$** | **508.00** | **$** | **508.00** | **$** | **508.00** |
| $ | 145.00 | $ | 145.00 | $ | 145.00 | $ | 145.00 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| $ | 25,209.49 | $ | 25,409.49 | $ | 25,209.49 | $ | 25,409.49 |
| $ | 5,590.51 | $ | 5,390.51 | $ | 5,590.51 | $ | 5,390.51 |
| $ | 5,590.51 | $ | 5,390.51 | $ | 5,590.51 | $ | 5,390.51 |